UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

| Present: The Honorable | John D. Early, United States Magistrate Judge |
|---|---|
| Maria Barr | C/S 06/11/20 |
| Deputy Clerk | Court Reporter / Recorder |
| Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Ryan E. Hatch<br>David E. Skeels<br>Jennifer A. Tatum-Lee<br>Cabrach J. Connor | Seth M. Sproul<br>Tucker Nephi Terhufen |

**Proceedings:** Order re Hearing on Plaintiff's Motion to Compel (Dkt. 115)

## I.
## INTRODUCTION

On September 20, 2019, Plaintiff Pinn, Inc. ("Plaintiff" or "Pinn") filed a Complaint against Apple, Inc. ("Defendant" or "Apple") for patent infringement. Dkt. 1. Following consolidation of this action with two other actions (see Dkt. 71), on April 17, 2020, Pinn filed its operative Second Amended Complaint alleging infringement of U.S. Patent Nos. 9,807,491; 10,455,066; and 10,609,198. Dkt. 93.

On May 19, 2020, Pinn filed a Motion to Compel Apple to Provide Further Responses to certain of Pinn's Requests for Production of Documents ("RFPs") and Interrogatories (Dkt. 115, "Motion"), with accompanying Local Rule 37 Joint Stipulation (Dkt. 115-1, "Joint Stipulation" or "Jt. Stip.") and supporting and opposing declarations and exhibits, portions of which were filed under seal (Dkt. 115-2 to 115-17, 119-1 to 119-6 (sealed), 125 (sealing order)). On May 28, 2020, each party separately filed a Supplemental Memorandum in support of or in opposition to the Motion. Dkt. 122, 123.

According to Apple, the parties met and conferred on the issues raised in the Joint Stipulation on May 1, during which "Apple agreed to supplement its discovery responses to address the parties' disputes by May 8." Dkt. 122 at 1. But two days before Apple's supplemental responses were due, Pinn served its portion of the Joint Stipulation upon Apple. Id. Apple provided its supplemental responses on May 8, as the parties agreed, and requested Pinn withdraw the Joint Stipulation. Id. The parties met and conferred on May 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

to discuss Apple's supplemental responses, which Pinn contended were still deficient. Id. Ultimately, Pinn declined to withdraw the Joint Stipulation. Id. at 1-2. Pinn does not appear to contest Apple's account of these events. The parties, in their supplemental memoranda, agreed that three issues raised in the Joint Stipulation are no longer in dispute: (1) Apple's general objections (Jt. Stip. at 23-29); (2) Apple's response to Interrogatory No. 2, which relates to damages (Jt. Stip. at 40-46); and Apple's response to Interrogatory No. 8 and RFP No. 21, which concern the parties' pre-suit communications (Jt. Stip. at 92-102). See Dkt. 122 at 3; Dkt. 123 at 2.

On June 11, 2020, counsel for the parties were heard telephonically and made arguments on the Motion, with certain agreements by the parties placed on the record. Based upon the parties' representations in their respective supplemental memoranda and as set forth at the hearing, the Court will only rule on those matters that appear to remain in dispute; as to all other matters, the Motion is denied as moot.

For the reasons set forth below and at the hearing, the Court rules as follows.

## II.
## RELEVANT LAW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. ("Rule") 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citations omitted).

Under Rule 34(a)(1), a party may serve on any other party requests, within the scope of Rule 26(b), to produce or permit inspection of, among other things, "(A) any designated documents or electronically stored information." Such requests "must describe with reasonable particularity each item or category of items to be inspected . . . [and] must specify a reasonable time, place, and manner for the inspection . . . ." Rule 34(b)(1)(A), (B). The party responding to a request for production must, "[f]or each item or category, . . . either state that inspection . . . will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Rule 34(b)(2)(B). "An objection must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Rule 34(b)(2)(C).

Pursuant to Rule 33, "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Rule 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity." Rule 33(b)(4). If the answer to an interrogatory may be determined by examining a party's business records, and "if the burden of deriving or ascertaining the answer will be substantially the same for either party," the responding party may answer by specifying (and making available) the records in sufficient detail to allow the interrogating party to locate and them as readily as the propounding party. Rule 33(d). A propounding party may move for an order compelling an answer to an interrogatory if "a party fails to answer an interrogatory submitted under Rule 33." Rule 37(a)(3)(B)(iii).

"Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance. In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." United States v. McGraw–Hill Cos., 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) (citations and internal quotation marks omitted); see also DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998).

## III.
## DISCUSSION

As an initial matter, Apple argues this Motion should be denied because Pinn failed to comply with Local Rule 37 by serving the Joint Stipulation before Apple's supplemental responses were due on May 8. In support, Apple cites this Court's order on discovery matters in Green Crush, LLC v. Paradise Splash I, Inc., 2019 WL 8640652 (C.D. Cal. May 28, 2019).

Local Rule 37-1 requires counsel for the parties, before filing a discovery motion, to "meet and confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." Counsel may file a joint stipulation with the notice of motion under Local Rule 37-2 only if counsel are unable to settle their

differences after meeting and conferring according to the requirements set forth in Local Rule 37-1.

Although Pinn's conduct in serving its portion of a joint submission under Local Rule 37-2 before receiving promised supplemental responses discussed during the parties' meet and confer session may violate the spirit of Local Rule 37, the Court will not deny the Motion on that basis. Local Rule 37-2.2 provides that the moving party may serve its portion of a proposed joint submission "[f]ollowing the conference of counsel." The "conference of counsel" as defined in Local Rule 37-1 is for counsel to "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." Viewing the intent behind the rule in mandating such a conference, arguably, when one party agrees, within a short time period, to provide supplemental responses as part of the meet and confer process, the other party should, keeping with intent behind the rule, wait to review those supplemental responses before sending a joint submission regarding the original responses. Thus, here, it would have been better for Pinn to wait to review promised supplemental responses provided as part of the meet and confer process before sending its portion of a joint submission regarding unsupplemented responses. However, the text of Local Rule 37 permits the forwarded of a joint submission "following the conference of counsel." Thus, the situation here is unlike the one in Green Crush, in which "the moving party . . . circulate[d] its portion of the joint stipulation before the parties ha[d] even discussed the disputes." See Green Crush, LLC, 2019 WL 8640652, at *5. Here, the parties had met and conferred on May 1 and 11 to discuss the disputed issues. In addition, Pinn has withdrawn portions of the Motion as to some of the responses to which Apple provided supplemental responses. See Dkt. 123 at 2. Under these circumstances, denying the Motion on grounds that Pinn's failure to comply with the spirit of Local Rule 37-2 is not appropriate.

Turning to the remaining disputes, they fall into the following categories: (1) Apple's verified interrogatory responses; (2) Apple's source code; (3) non-infringement contentions; (4) non-infringing alternatives; (5) Apple's affirmative defenses; and (6) information on royalties and licenses. The Court addresses each category in turn.

**A. Apple's Verified Interrogatory Responses**

Pinn requests that the Court order Apple to verify all its answers to Pinn's Interrogatories pursuant to Rule 33(b)(3) and (5). Jt. Stip. at 17; Dkt. 123 at 2. Apple states it has "never refused to provide verified interrogatory responses," but, because of the ongoing COVID-19 pandemic, providing its verified interrogatory responses "has taken longer than originally expected." Dkt. 122 at 3. Apple states it is "diligently working to identify the right

individuals to cover the multiple topics in its interrogatory responses and expects to complete this process very soon." Dkt. 122 at 4; see also Jt. Stip. at 17-18.

The COVID-19 pandemic does not excuse Apple's delay in verifying its interrogatory responses. Apple's obligation to provide verified interrogatory answers is mandated by Rule 33(b)(3), requiring each answer to be made "separately and fully in writing under oath," and Rule 33(b)(5) requires that interrogatory answers be signed by the person making the answers, with counsel who objects signing "any objections." Accordingly, if it has not already done so, Apple shall serve verifications to its previously served answers to interrogatory within 10 days from the date of this Order.

**B. Apple's Source Code**

The parties represent the issue in the Motion regarding the logistics of the review of Apple's proprietary source code by Pinn's expert during the Covid-19 outbreak has been resolved and no ruling by the Court is requested. As a result, the Motion, as to the source code issue, is denied as moot.

**C. Non-Infringement Contentions (Interrogatory Nos. 3 and 4/RFP No. 35)**

Interrogatory Nos. 3 and 4 and RFP No. 35 seek information related to Apple's non-infringement contentions and supporting evidence. Jt. Stip. 47.

In its supplemental response to Interrogatory No. 3, which is incorporated by reference in its answer to Interrogatory No. 4 (see Jt. Stip. at 84), Apple states, in part:

> Subject to and without waiving its objections, Defendant responds as follows: Pursuant to Fed. R. Civ. P. 26, 33(d), and 34, Defendant identifies the following technical documents related to the design and development of the Accused Products. By identifying these documents, Apple makes no representations as to the accuracy of any of these documents in describing the operation of the as-released versions of the Accused Products. The source code for the Accused Products, as well as the testimony of Apple's engineers, is the best authority regarding the operation of the as released versions of the Accused Products. Apple will make the relevant source code for the Accused Products available for inspection as soon as is practicable in light of the ongoing COVID-19 crisis, and intends to supplement its response to this Interrogatory to identify the source code supporting its non-infringement arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

| Bates Begin | Bates End |
|---|---|
| APL-PINN_00062005 | APL-PINN_00062005 |
| APL-PINN_00062006 | APL-PINN_00062006 |
| APL-PINN_00062007 | APL-PINN_00062007 |
| APL-PINN_00062008 | APL-PINN_00062008 |
| APL-PINN_00062009 | APL-PINN_00062009 |
| APL-PINN_00062010 | APL-PINN_00062010 |
| APL-PINN_00062011 | APL-PINN_00062011 |
| APL-PINN_00062012 | APL-PINN_00062012 |
| APL-PINN_00062013 | APL-PINN_00062013 |
| APL-PINN_00062014 | APL-PINN_00062014 |
| APL-PINN_00062015 | APL-PINN_00062015 |
| APL-PINN_00062016 | APL-PINN_00062016 |
| APL-PINN_00062017 | APL-PINN_00062017 |
| APL-PINN_00043565 | APL-PINN_00043565 |
| APL-PINN_00062105 | APL-PINN_00062105 |
| APL-PINN_00062106 | APL-PINN_00062106 |
| APL-PINN_00062107 | APL-PINN_00062107 |
| APL-PINN_00062124 | APL-PINN_00062124 |
| APL-PINN_00062141 | APL-PINN_00062141 |
| APL-PINN_00062219 | APL-PINN_00062219 |
| APL-PINN_00062570 | APL-PINN_00062570 |
| APL-PINN_00062571 | APL-PINN_00062572 |
| APL-PINN_00062581 | APL-PINN_00062581 |
| APL-PINN_00062902 | APL-PINN_00062903 |
| APL-PINN_00045117 | APL-PINN_00045117 |
| APL-PINN_00113174 | APL-PINN_00113176 |
| APL-PINN_00060293 | APL-PINN_00060298 |
| APL-PINN_00120492 | APL-PINN_00120495 |
| APL-PINN_00060365 | APL-PINN_00060366 |
| APL-PINN_00046091 | APL-PINN_00046091 |
| APL-PINN_00064950 | APL-PINN_00064950 |
| APL-PINN_00123961 | APL-PINN_00123977 |
| APL-PINN_00123978 | APL-PINN_00123984 |
| APL-PINN_00062142 | APL-PINN_00062158 |
| APL-PINN_00062160 | APL-PINN_00062182 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

| | |
|---|---|
| APL-PINN_00062183 | APL-PINN_00062200 |
| APL-PINN_00062201 | APL-PINN_00062218 |
| APL-PINN_00062220 | APL-PINN_00062237 |
| APL-PINN_00013679 | APL-PINN_00013693 |
| APL-PINN_00013694 | APL-PINN_00013707 |
| APL-PINN_00062263 | APL-PINN_00062281 |
| APL-PINN_00013708 | APL-PINN_00013721 |
| APL-PINN_00013740 | APL-PINN_00013758 |
| APL-PINN_00060493 | APL-PINN_00060511 |
| APL-PINN_00047327 | APL-PINN_00047345 |
| APL-PINN_00060512 | APL-PINN_00060530 |
| APL-PINN_00014064 | APL-PINN_00014069 |
| APL-PINN_00014084 | APL-PINN_00014097 |
| APL-PINN_00014099 | APL-PINN_00014112 |
| APL-PINN_00014113 | APL-PINN_00014131 |
| APL-PINN_00014132 | APL-PINN_00014150 |
| APL-PINN_00050956 | APL-PINN_00050957 |
| APL-PINN_00050958 | APL-PINN_00050959 |
| APL-PINN_00050960 | APL-PINN_00050961 |
| APL-PINN_00050962 | APL-PINN_00050962 |
| APL-PINN_00050963 | APL-PINN_00050963 |
| APL-PINN_00050964 | APL-PINN_00050964 |
| APL-PINN_00050965 | APL-PINN_00050965 |
| APL-PINN_00050966 | APL-PINN_00050967 |
| APL-PINN_00050968 | APL-PINN_00050970 |
| APL-PINN_00050971 | APL-PINN_00050982 |
| APL-PINN_00050983 | APL-PINN_00050991 |
| APL-PINN_00050992 | APL-PINN_00051000 |
| APL-PINN_00051001 | APL-PINN_00051019 |
| APL-PINN_00051020 | APL-PINN_00051038 |
| APL-PINN_00051039 | APL-PINN_00051040 |
| APL-PINN_00051047 | APL-PINN_00051076 |
| APL-PINN_00051041 | APL-PINN_00051041 |
| APL-PINN_00051042 | APL-PINN_00051042 |
| APL-PINN_00051043 | APL-PINN_00051046 |
| APL-PINN_00043285 | APL-PINN_00043483 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

| | |
|---|---|
| APL-PINN_00043509 | APL-PINN_00043561 |
| APL-PINN_00044366 | APL-PINN_00044419 |
| APL-PINN_00044420 | APL-PINN_00044428 |
| APL-PINN_00047242 | APL-PINN_00047273 |
| APL-PINN_00013586 | APL-PINN_00013618 |
| APL-PINN_00013619 | APL-PINN_00013675 |
| APL-PINN_00062159 | APL-PINN_00062159 |
| APL-PINN_00047274 | APL-PINN_00047312 |
| APL-PINN_00060492 | APL-PINN_00060492 |
| APL-PINN_00013676 | APL-PINN_00013676 |
| APL-PINN_00047313 | APL-PINN_00047318 |
| APL-PINN_00013738 | APL-PINN_00013738 |
| APL-PINN_00013739 | APL-PINN_00013739 |
| APL-PINN_00013774 | APL-PINN_00013774 |
| APL-PINN_00013775 | APL-PINN_00013775 |
| APL-PINN_00013776 | APL-PINN_00013776 |
| APL-PINN_00013777 | APL-PINN_00013777 |
| APL-PINN_00013778 | APL-PINN_00013846 |
| APL-PINN_00013863 | APL-PINN_00013906 |
| APL-PINN_00013907 | APL-PINN_00013974 |
| APL-PINN_00013975 | APL-PINN_00014044 |
| APL-PINN_00014045 | APL-PINN_00014048 |
| APL-PINN_00014049 | APL-PINN_00014052 |
| APL-PINN_00014058 | APL-PINN_00014063 |
| APL-PINN_00014064 | APL-PINN_00014069 |
| APL-PINN_00014070 | APL-PINN_00014075 |
| APL-PINN_00014076 | APL-PINN_00014081 |
| APL-PINN_00014098 | APL-PINN_00014098 |
| APL-PINN_00062578 | APL-PINN_00062580 |
| APL-PINN_00045046 | APL-PINN_00045081 |
| APL-PINN_00045088 | APL-PINN_00045103 |
| APL-PINN_00014718 | APL-PINN_00014783 |
| APL-PINN_00046584 | APL-PINN_00046633 |
| APL-PINN_00046714 | APL-PINN_00046734 |
| APL-PINN_00046735 | APL-PINN_00046758 |
| APL-PINN_00046759 | APL-PINN_00046782 |

| | |
|---|---|
| APL-PINN_00046783 | APL-PINN_00046803 |
| APL-PINN_00050904 | APL-PINN_00050904 |
| APL-PINN_00044449 | APL-PINN_00044471 |
| APL-PINN_00298818 | APL-PINN_00298836 |
| APL-PINN_00299427 | APL-PINN_00299434 |
| APL-PINN_00071063 | APL-PINN_00071081 |
| APL-PINN_00271452 | APL-PINN_00271469 |
| APL-PINN_00255757 | APL-PINN_00255769 |
| APL-PINN_00255770 | APL-PINN_00255793 |
| APL-PINN_00255818 | APL-PINN_00255820 |
| APL-PINN_00062062 | APL-PINN_00062063 |
| APL-PINN_00066418 | APL-PINN_00066433 |
| APL-PINN_00271557 | APL-PINN_00271585 |
| APL-PINN_00060269 | APL-PINN_00060271 |
| APL-PINN_00060272 | APL-PINN_00060274 |
| APL-PINN_00114893 | APL-PINN_00114905 |
| APL-PINN_00066699 | APL-PINN_00066711 |
| APL-PINN_00066749 | APL-PINN_00066777 |
| APL-PINN_00063205 | APL-PINN_00063217 |

Apple further responds as follows:

> Pinn bears the burden of proving that the Accused Products infringe any asserted claim of the asserted patents, and Pinn's Infringement Contentions provided to Apple do not meet Pinn's burden by showing, specifically and for each limitation, how Apple's Accused Products practice each claim. For that reason alone, Apple does not infringe any asserted claim. Based on Apple's investigation to date and review of Pinn's Disclosure of Infringement Contentions, at least the following claim limitations are not met by the Accused Products:
>
> **<u>AirPods Products</u>**
> **'491 Patent**
> - 1[a]: "a main body comprising a connection hole, a user input button, at least one processor and at least one memory"
> - 1[b]: "a wireless earbud configured to plugging into the connection hole of the main body to form a single integrated body with the main body"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

- 1[f]/1[g]: "wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory . . . for initiating the wireless pairing with the smartphone in response to pressing of the user input button provided on the main body"
- 1[f]/1[h]: "wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory . . . for initiating battery charging of the wireless earbud in response to the wireless earbud's plugging into the connection hole"
- 1[f]/1[i]: "wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory . . . for turning off the wireless pairing with the smartphone when the wireless earbud is being charged."
- 9[b]: "The apparatus of claim 1, wherein, when paired with the smartphone, the apparatus is configured: to provide a battery status to the smartphone for displaying on a mobile application of the smartphone"
- 10[b]: "initiating wireless pairing with the smartphone in response to pressing of the user input button provided on the main body;"
- 10[c]: "turning off the wireless pairing with the smartphone when the wireless earbud gets charged from the main body."

**'066 Patent**

- 1[a]: "a base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 1[b]: "a wireless earbud configured for plugging into the connection hole of the base station to form an integrated body with the base station"
- 1[c]: "wherein the system is capable of wirelessly pairing with a smartphone for the wireless earbud to receive audio data originated from the smartphone"
- 1[d]: "wherein, in response to pressing of the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data originated from the smartphone and plays audio using the audio data from the smartphone"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

- 1[e]: "wherein, in response to plugging the wireless earbud into the connection hole, the at least one processor is configured to execute computer programmable instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud"
- 8: "The system of claim 1, wherein the base station further comprises an information display."
- 9[a]: "The system of claim 1, wherein, while the wireless earbud is plugged in the connection hole of the base station, the circuitry of the base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor."
- 9[b]: "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone."
- 10[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 10[b]: "a wireless earbud configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 10[d]: "wherein, while the wireless earbud is plugged in the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 10[g]: "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone"
- 10[h]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 21: "The system of claim 10, wherein the at least one processor is configured to execute computer program instructions stored in the at least one memory to turn off the wireless pairing while the wireless earbud is being charged."
- 26: "The system of claim 10, wherein the mobile base station further comprises a communication module configured to interface data

communication with at least one of the smartphone and the wireless earbud, wherein in response to pressing the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to process the wireless pairing with the smartphone."

- 28: "The system of claim 10, wherein the at least one processor is configured to determine whether the wireless earbud is plugged into the connection hole or unplugged out of the connection hole, wherein the mobile base station further comprises a communication module configured to interface data communication with the at least one of the smartphone and the wireless earbud, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 30[b]: "a mobile apparatus comprising a main body and a wireless earbud"
- 30[c]: "the main body comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 30[d]: "the wireless earbud configured for plugging into the connection hole of the main body to form an integrated body with the main body"
- 30[f]: "wherein, while the wireless earbud is plugged in the connection hole of the main body, the circuitry of the main body is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 30[i]: "wherein the mobile apparatus is configured to generate sound when the at least one mobile application is searching for the mobile apparatus while the wireless earbud and the smartphone are paired"
- 30[j]: "wherein, in response to pressing of the user input button on the main body, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 34[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 34[b]: "a wireless earbud capable of wireless pairing with a smartphone and configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 34[c]: "wherein, in response to pressing of the user input button of the

mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone"

- 34[g]: "wherein the system is configured to generate sound when a mobile application installed on the smartphone is searching for the system while the wireless earbud is paired with the smartphone"
- 36: "The system of claim 34, wherein, in response to plugging the wireless earbud into the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 38: "The system of claim 34, wherein the system is configured such that, subsequent to unplugging the wireless earbud out of the connection hole of the mobile base station, the wireless earbud generates sound using audio data from the smartphone without a user input to the wireless earbud."

**'198 Patent**

- 1[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 1[b]: "a wireless earbud configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 1[d]: "wherein, while the wireless earbud is plugged in the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 1[g]: "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone"
- 1[h]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 1[i]: "wherein the wireless earbud is not capable of wirelessly sending

data to the mobile base station."

- 9: "The system of claim 1, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud."
- 12: "The system of claim 1, wherein the at least one processor is configured to execute computer program instructions stored in the at least one memory to turn off the wireless pairing while the wireless earbud is being charged."
- 15: "The system of claim 1, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein the at least one processor is configured to determine whether the wireless earbud is plugged into the connection hole or unplugged out of the connection hole."
- 17: "The system of claim 1, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein in response to pressing the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to process the wireless pairing with the smartphone."
- 19: "The system of claim 1, wherein the at least one processor is configured to determine whether the wireless earbud is plugged into the connection hole or unplugged out of the connection hole, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 21[b]: "a mobile apparatus comprising a main body and a wireless earbud"
- 21[c]: "the main body comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 21[d]: "the wireless earbud configured for plugging into the connection hole of the main body to form an integrated body with the main body"

- 21[f]: "wherein, while the wireless earbud is plugged in the connection hole of the main body, the circuitry of the main body is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 21[i]: "wherein the mobile apparatus is configured to generate sound when the at least one mobile application is searching for the mobile apparatus while the wireless earbud and the smartphone are paired"
- 21[j]: "wherein, in response to pressing of the user input button on the main body, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 21[l]: "wherein the wireless earbud is not capable of wirelessly sending data to the main body."
- 25[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 25[b]: "a wireless earbud capable of wireless pairing with a smartphone and configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 25[c]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone"
- 25[g]: "wherein the system is configured to generate sound when a mobile application installed on the smartphone is searching for the system while the wireless earbud is paired with the smartphone"
- 25[h]: "wherein the wireless earbud is not capable of wirelessly sending data to the mobile base station."
- 27: "The system of claim 25, wherein, in response to plugging the wireless earbud into the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 29: "The system of claim 25, wherein the system is configured such that, subsequent to unplugging the wireless earbud out of the

connection hole of the mobile base station, the wireless earbud generates sound using audio data from the smartphone without a user input to the wireless earbud."

**<u>Powerbeats Pro</u>**

**'491 Patent**

- 1[a]: "a main body comprising a connection hole, a user input button, at least one processor and at least one memory"
- 1[b]: "a wireless earbud configured to plugging into the connection hole of the main body to form a single integrated body with the main body"
- 1[e]: "wherein, when the wireless earbud is plugged into the connection hole, the wireless earbud is configured to perform wired two-way data communication with the main body"
- 1[f]/1[g]: ""wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory . . . for initiating the wireless pairing with the smartphone in response to pressing of the user input button provided on the main body"
- 1[f]/1[h]: "wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory . . . for initiating battery charging of the wireless earbud in response to the wireless earbud's plugging into the connection hole"
- 1[f]/1[i]: "wherein the at least one processor of the main body is configured to execute computer program instructions stored in the at least one memory . . . for turning off the wireless pairing with the smartphone when the wireless earbud is being charged."
- 9[b]: "The apparatus of claim 1, wherein, when paired with the smartphone, the apparatus is configured: to provide a battery status to the smartphone for displaying on a mobile application of the smartphone"
- 10[b]: "initiating wireless pairing with the smartphone in response to pressing of the user input button provided on the main body;"
- 10[c]: "turning off the wireless pairing with the smartphone when the wireless earbud gets charged from the main body."

**'066 Patent**

- 1[a]: "a base station comprising a connection hole, a user input button, at least on processor, at least one memory, and circuitry"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

- 1[b]: "a wireless earbud configured for plugging into the connection hole of the base station to form an integrated body with the base station"
- 1[c]: "wherein the system is capable of wirelessly pairing with a smartphone for the wireless earbud to receive audio data originated from the smartphone"
- 1[d]: "wherein, in response to pressing of the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone such that the wireless earbud receives audio data originated from the smartphone and plays audio using the audio data from the smartphone"
- 1[e]: "wherein, in response to plugging the wireless earbud into the connection hole, the at least one processor is configured to execute computer programmable instructions stored in the at least one memory to initiate charging of a battery of the wireless earbud"
- 8: "The system of claim 1, wherein the base station further comprises an information display."
- 9[a]: "The system of claim 1, wherein, while the wireless earbud is plugged in the connection hole of the base station, the circuitry of the base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor."
- 9[b]: "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone."
- 10[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 10[b]: "a wireless earbud configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 10[d]: "wherein, while the wireless earbud is plugged in the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 10[g]: "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for

the mobile system while the wireless earbud is paired with the smartphone"

- 10[h]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 21: "The system of claim 10, wherein the at least one processor is configured to execute computer program instructions stored in the at least one memory to turn off the wireless pairing while the wireless earbud is being charged."
- 26: "The system of claim 10, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein in response to pressing the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to process the wireless pairing with the smartphone."
- 28: "The system of claim 10, wherein the at least one processor is configured to determine whether the wireless earbud is plugged into the connection hole or unplugged out of the connection hole, wherein the mobile base station further comprises a communication module configured to interface data communication with the at least one of the smartphone and the wireless earbud, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 30[b]: "a mobile apparatus comprising a main body and a wireless earbud"
- 30[c]: "the main body comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 30[d]: "the wireless earbud configured for plugging into the connection hole of the main body to form an integrated body with the main body"
- 30[f]: "wherein, while the wireless earbud is plugged in the connection hole of the main body, the circuitry of the main body is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 30[i]: "wherein the mobile apparatus is configured to generate sound

when the at least one mobile application is searching for the mobile apparatus while the wireless earbud and the smartphone are paired"

- 30[j]: "wherein, in response to pressing of the user input button on the main body, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 34[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 34[b]: "a wireless earbud capable of wireless pairing with a smartphone and configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 34[c]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone"
- 34[g]: "wherein the system is configured to generate sound when a mobile application installed on the smartphone is searching for the system while the wireless earbud is paired with the smartphone"
- 36: "The system of claim 34, wherein, in response to plugging the wireless earbud into the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 38: "The system of claim 34, wherein the system is configured such that, subsequent to unplugging the wireless earbud out of the connection hole of the mobile base station, the wireless earbud generates sound using audio data from the smartphone without a user input to the wireless earbud."

**'198 Patent**

- 1[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 1[b]: "a wireless earbud configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

- 1[d]: "wherein, while the wireless earbud is plugged in the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 1[g]: "wherein the mobile system is configured to generate sound when a mobile application installed on the smartphone is searching for the mobile system while the wireless earbud is paired with the smartphone"
- 1[h]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 1[i]: "wherein the wireless earbud is not capable of wirelessly sending data to the mobile base station."
- 9: "The system of claim 1, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud."
- 12: "The system of claim 1, wherein the at least one processor is configured to execute computer program instructions stored in the at least one memory to turn off the wireless pairing while the wireless earbud is being charged."
- 15: "The system of claim 1, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein the at least one processor is configured to determine whether the wireless earbud is plugged into the connection hole or unplugged out of the connection hole."
- 17: "The system of claim 1, wherein the mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein in response to pressing the user input button, the at least one processor is configured to execute computer program instructions stored in the at least one memory to process the wireless pairing with the smartphone."
- 19: "The system of claim 1, wherein the at least one processor is configured to determine whether the wireless earbud is plugged into the connection hole or unplugged out of the connection hole, wherein the

mobile base station further comprises a communication module configured to interface data communication with at least one of the smartphone and the wireless earbud, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."

- 21[b]: "a mobile apparatus comprising a main body and a wireless earbud"
- 21[c]: "the main body comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 21[d]: "the wireless earbud configured for plugging into the connection hole of the main body to form an integrated body with the main body"
- 21[f]: "wherein, while the wireless earbud is plugged in the connection hole of the main body, the circuitry of the main body is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor"
- 21[i]: "wherein the mobile apparatus is configured to generate sound when the at least one mobile application is searching for the mobile apparatus while the wireless earbud and the smartphone are paired"
- 21[j]: "wherein, in response to pressing of the user input button on the main body, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing"
- 21[l]: "wherein the wireless earbud is not capable of wirelessly sending data to the main body."
- 25[a]: "a mobile base station comprising a connection hole, a user input button, at least one processor, at least one memory, and circuitry"
- 25[b]: "a wireless earbud capable of wireless pairing with a smartphone an configured for plugging into the connection hole of the mobile base station to form an integrated body with the mobile base station"
- 25[c]: "wherein, in response to pressing of the user input button of the mobile base station, the at least one processor is configured to execute computer program instructions stored in the at least one memory to initiate processing for the wireless pairing with the smartphone"
- 25[g]: "wherein the system is configured to generate sound when a mobile application installed on the smartphone is searching for the system while the wireless earbud is paired with the smartphone"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

- 25[h]: "wherein the wireless earbud is not capable of wirelessly sending data to the mobile base station."
- 27: "The system of claim 25, wherein, in response to plugging the wireless earbud into the connection hole of the mobile base station, the circuitry of the mobile base station is configured to obtain characteristics of the wireless earbud and send the characteristics to the at least one processor, wherein, when the wireless earbud is plugged into the connection hole, the system is configured such that the smartphone wirelessly communicates with at least one of the mobile base station and the wireless earbud."
- 29: "The system of claim 25, wherein the system is configured such that, subsequent to unplugging the wireless earbud out of the connection hole of the mobile base station, the wireless earbud generates sound using audio data from the smartphone without a user input to the wireless earbud."

Defendant further responds that its technical expert is knowledgeable about its non-infringement arguments in this case and will be made available for deposition during expert discovery.

Jt. Stip. at 61-83 (footnotes omitted).

As to RFP No. 35, Apple agreed to "produce responsive, non-privileged documents within its possession, custody, or control and that can be located after a reasonable search" in an amended response. Jt. Stip. at 84-85.

Pinn argues that Apple's supplemental responses to these requests are insufficient, because Apple does not explain "why it does not infringe Pinn's patents and does not provide Apple's theory of non-infringement." Dkt. 123 at 4. According to Pinn, Apple's supplemental responses to Interrogatory Nos. 3 and 4 lists 120 documents that total over 1600 pages, and "Pinn cannot ascertain Apple's non-infringement contentions from those 1,600+ pages." Dkt. 123 at 4. Pinn also suggests Apple's list of elements that it does not practice is not useful because it "mirrors the information in Apple's counterclaim." Id. Pinn further contends Apple's lists of documents and elements do not comply with Rule 33(d), because the burden of determining the answer to these interrogatories from Apple's response is greater for Pinn than it is for Apple. Dkt. 123 at 4-5; see also Rule 33(d). Lastly, Pinn argues that the cases Apple relies on to support its position that it need not provide its non-infringement contentions at this stage of litigation (see Jt. Stip. at 58-59) are distinguishable,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

because these cases did not have the same scheduling order and same discovery schedule as this case. See Dkt. 123 at 5.

By identifying (1) "the limitations of the asserted claims that it contends are not infringed," (2) "technical documents related to the design and development of the Accused Products pursuant to Rule 33(d)," and (3) "Apple's expert as knowledgeable regarding Apple's non-infringement positions," Apple argues that it has provided "sufficient disclosure of its non-infringement contentions for this stage in the fact discovery period (i.e., prior to commencement of any depositions, issuance of the claim construction order, and meaningful case narrowing by Pinn, e.g., by dropping some of the numerous claims it asserts across the three patents-at-issue)." Jt. Stip. at 56, 58. Apple also argues that "courts often do not require any substantive responses to non-infringement contention interrogatories until after the parties have conducted sufficient discovery to complete their investigation." Id. at 58.

The Court first addresses Apple's response to Interrogatory Nos. 3 and 4. Generally, contention interrogatories are permissible. Courts have recognized that contention interrogatories "may in certain cases be the most reliable and cost-effective discovery device, which would be less burdensome than depositions at which contention questions are propounded." Cable & Comput. Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 652 (C.D. Cal. 1997); SPH Am., LLC v. Research in Motion, Ltd., 2016 WL 6305414, at *2 (S.D. Cal. Aug. 16, 2016). Where contention interrogatories are served close to trial, rather than at the inception of an action, "they can also be a useful tool to narrow the issues in dispute." Protective Optics, Inc. v. Panoptx, Inc., 2007 WL 963972, at *2 (N.D. Cal. Mar. 30, 2007). However, contention interrogatories can, depending upon how they are used, become unduly burdensome and not proportional to the case's needs under Rule 26(b)(1). See, e.g., Former S'holders of Cardiospectra, Inc. v. Volcano Corp., 2013 WL 5513275, at *2 (N.D. Cal. Oct. 4, 2013) (requiring a "listing every single fact in support of [the parties'] contentions would be unduly burdensome"); Haggarty v. Wells Fargo Bank, N.A., 2012 WL 4113341, at *2 (N.D. Cal. Sept. 18, 2012) (contention interrogatories "are often overly broad and unduly burdensome" when they require a party to state "every fact" or "all facts" supporting responses). Here, the fact discovery cutoff is August 4, 2020. See Dkt. 76.

As noted, under Rule 33(d), a responding party may answer an interrogatory by specifying records, but only if, among other things, the answer may be determined by examining those records, the burden of doing so is substantially the same for either party, and the records at issue are identified with sufficient specificity to enable the propounding party to identify them as readily as the responding party could. See Rule 33(d).

Here, Pinn's contention that Apple's answers for Interrogatory Nos. 3 and 4 do not comply with Rule 33(d) is well-taken. A responding party's citation to records under Rule 33(d) in support of a response to a contention interrogatory may be inappropriate where the responding party "is more familiar with its contentions than is the" propounding party. See Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc. 224 F.R.D. 644, 652 (N.D. Cal. 2004) (granting motion to compel, finding responding party's reliance on Rule 33(d) was "misplaced" in response to a contention interrogatory regarding willful infringement contentions). Other than stating that the documents it identifies in response to Interrogatory Nos. 3 and 4 are "technical documents related to the design and development of the Accused Products" (Jt. Stip. at 61), Apple does not offer any explanation on how the more than 1,600 pages of documents support its non-infringement contentions. Moreover, Apple's list of elements, which spans roughly 23 pages in the Joint Stipulation, further lays bare the inapplicability of Rule 33(d), Apple does not attempt to connect any of the 1,600 pages, or grouping thereof, to any of the portion of 23-page listing of elements. It cannot be said that the burden of analyzing the 1,600 pages of document, untethered to any particular noninfringement contention, satisfies the requirements of Rule 33(d).

Apple's citation to FootBalance Systems v. Zero Gravity Inside, Inc., 2018 WL 722834 (S.D. Cal. Feb. 2, 2018) does not alter the analysis because in that case, the court, after rejecting the responding party's argument that such an interrogatory was "premature," limited a non-infringement contention interrogatory to require, instead of "all" supporting facts, only "the material or principal" supporting facts and found that, as limited, a response listing "claim limitations which [the responding party] plans to contest," including specific bases for those challenges. Id. at *2-3. The responding party in FootBalance Systems did not rely on Rule 33(d), nor did the court base its ruling on Rule 33(d). In addition, the Court notes that Apple has alleged its own affirmative counterclaim seeking a declaration of non-infringement, providing a separate basis for the relevance of the factual underpinnings of Apple's contentions. See Dkt. 104 at 42-44. Further, Apple's statement that its response is sufficient "at this stage of the case" (Dkt. 122 at 4) ignores the fact that the discovery cutoff is less than two months away. It is unclear at what "stage" of the case Apple would permit discovery into the facts underlying its non-infringement contentions and counterclaim. Apple shall provide further supplemental responses to Interrogatory Nos. 3 and 4 that respond to the interrogatories within 10 days from the date of this Order; to the extent Apple seeks to rely on Rule 33(d) as part of its response, it must state which documents or groups of documents relate to which noninfringement contentions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
|---|---|---|---|
| Title | Pinn, Inc. v. Apple, Inc. | | |

As to the response to RFP No. 35, Apple agreed to produce responsive, nonprivileged documents in its possession, custody, or control. The Court finds the response complies with Rule 34. Plaintiff asserts Apple has not produced any responsive records. Under Rule 34, however, a propounding party must demand a date for production in the request, and a responding party must complete the production "no later than the time for inspection specified in the request or another reasonable time specified in the response." Rule 34(b)(1)(B), (b)(2)(B). The parties have not directed the Court to a date by which production was demanded by Pinn in its RFPs, or a date by which Apple agreed to make its production in its response. Therefore, the Court has no basis to find Apple's production is late. The Court can say, considering the discovery cutoff of August 4, 2020, that production must be completed within 10 days from the date of this Order. With respect to a privilege log, if it has not already done so, Apple shall, within 10 days from the date of this Order, serve a compliant privilege log on Pinn with respect to any documents withheld from production on privilege or other grounds.

For the reasons above, the Motion is granted as to Interrogatory Nos. 3 and 4 and denied as to RFP No. 35. Apple shall serve supplemental responses that properly respond to Interrogatory Nos. 3 and 4 within 10 days from the date of this Order, except that any responsive ESI as defined by the operative stipulated ESI Order shall be produced or otherwise properly identified by June 30, 2020.

**D. Non-Infringing Alternatives (Interrogatory No. 6)**

Interrogatory No. 6 seeks Apple's contentions on non-infringing alternatives. During the meet-and-confer process, Apple informed Pinn that it currently does not intend to rely on non-infringing alternatives in this case. When Pinn asked Apple to put this assertion in a sworn statement or include it in its answer, Apple refused. See Jt. Stip. at 85.
In its amended response to Interrogatory No. 6, Apple states, in part:

> Subject to and without waiving any of its objections, Defendant responds as follows: Defendant does not infringe the Asserted Patents, and therefore, the Accused Products themselves are non-infringing. There is no need for Defendant to investigate or identify any non-infringing alternatives because the Accused Products do not infringe the Asserted Patents.
>
> Investigation and discovery are ongoing in this case. These objections and responses are based upon information currently available to Defendant, and are made without prejudice to Defendant's right to use or rely on any subsequently

> discovered information. Defendant specifically reserves the right to supplement, amend, modify, and/or correct these responses during discovery.

Jt. Stip. at 92.

Pinn argues that it is "entitled to know whether Apple intends to rely upon non-infringing alternatives and, if so, what those non-infringing alternatives are." Dkt. 123 at 5-6. Pinn also suggests Apple's supplemental response to Interrogatory No. 6 is insufficient because it is "evasive," because Apple contends that there is no need for it "to investigate or identify any non-infringing alternatives." Id. at 6. Pinn contends that "Apple should be required to provide an answer or be precluded from relying upon such alternatives." Id. Apple contends that its supplemental response "makes clear that Apple does not intend to rely on so-called 'non-infringing alternatives,' e.g., design-around products or solutions, at this time." Jt. Stip. at 89. Apple further contends that "[f]act discovery is ongoing, and Apple reserves the right to further investigate and develop its contentions regarding the availability of non-infringing alternatives or design-arounds." Id. In addition, Apple argues that although "it is Pinn's burden to prove damages, . . . in response to Apple's interrogatory requesting Pinn to provide its damages contentions, Pinn provided nothing in terms of the kind detail that would inform Apple as to whether so-called non-infringing alternatives would be relevant to the case." Id. at 90.

Interrogatory No. 6 is conditional. It only requires an answer "If [Apple] intend[] to rely for any purpose upon the availability of any suitable non-infringing alternative(s)," Apple is to provide a further response. Considering that Apple states that there is no need for it "to investigate or identify any non-infringing alternatives," Apple has expressed that it currently has no intention to rely on non-infringing alternatives. Therefore, Apple has provided an adequate response to Interrogatory No. 6. Even though Apple's response is qualified to express its answer "at this time" (Jt. Stip. at 89), a party can only respond to a contention interrogatory based on current information, so every interrogatory response is limited to a party's knowledge and information at the time of the response. Rule 26(e) creates continuing obligation to supplement its discovery responses if new or additional facts are learned. Pinn asks that this Court order Apple to be "precluded" from offering evidence at trial on non-infringing alternatives. As the Court finds Apple has sufficiently answered the interrogatory here, such a request would be for Judge Carter to determine at trial. As with all responses to discovery, particularly contention-related discovery, parties limit their responses at their own risk. Apple has limited its response to Interrogatory No. 6.

For the foregoing reasons, the Motion is denied as to Interrogatory No. 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

**E. <u>Apple's Affirmative Defenses (Interrogatory No. 9 and RFP No. 38)</u>**

These discovery requests relate to Apple's affirmative defenses of patent misuse, unclean hands, waiver, and estoppel. Jt. Stip. at 102. Apple has dropped its laches defense from the case. Dkt. 122 at 5 (citing Jt. Stip. at 108).

For Interrogatory No. 9, Apple states in an amended response that it "will produce relevant, non-privileged documents (if any) from which Pinn may ascertain the requested information, and/or supplement its response to this Interrogatory as discovery continues" pursuant to Rule 33(d). And in its supplemental response to this interrogatory, Apple answered, in relevant part:

> Subject to and without waiving its objections, Defendant responds as follows: Apple incorporates by reference its response to Interrogatory No. 7 regarding estoppel.
>
> Investigation and discovery are ongoing in this case. These objections and responses are based upon information currently available to Defendant, and are made without prejudice to Defendant's right to use or rely on any subsequently discovered information. Defendant specifically reserves the right to supplement, amend, modify, and/or correct these responses during discovery.

Jt. Stip. at 110. As for RFP No. 38, Apple agreed in an amended response to "produce responsive, non-privileged documents within its possession, custody, or control and that can be located after a reasonable search." Jt. Stip. at 110.

Apple contends that it has "provided ample disclosures regarding the facts underlying its affirmative defenses." Dkt. 122 at 5. Apple explains that its waiver and estoppel defenses "relate to the pre-suit communications between Apple and Pinn from 2016 and 2017. These communications are discussed in detail in Apple's responses to Interrogatories Nos. 7 and 8 (regarding estoppel and pre-suit communications) and have been sufficiently disclosed." Jt. Stip. at 107-08. Regarding its patent misuse and unclean hands defenses, "Apple indicated that it would provide a narrative response once it has an opportunity to take additional discovery, including depositions of Pinn witnesses." Dkt. 122 at 5; <u>see also</u> Jt. Stip. at 108. Further, Apple states it "supplemented its interrogatories on May 26 (not reflected in the record here) to provide a narrative response regarding the basis for each of these defenses." Dkt. 122 at 5 (emphasis omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

Pinn maintains that Apple's responses to these discovery requests are lacking, arguing that Apple is attempting to engage in a "fishing expedition"—especially considering Apple's response that it will provide factual responses after "it takes additional discovery, 'including the deposition of several Pinn witnesses.'" Dkt. 123 at 6. Notably, Pinn's Supplemental Memorandum barely addresses waiver and does not mention estoppel at all, focusing on Apple's responses about its patent misuse and unclean hands defenses. While Pinn asserts that "Apple's most recent supplementation provides no cognizable basis for waiver, unclean hands and patent misuse affirmative defenses," Pinn does not explain how this is so. Pinn also does not clarify whether "Apple's most recent supplementation" refers to Apple's May 26 supplemental responses that are not reflected in the record.

Affirmatives defenses, like allegations in a complaint, must be supported by facts or by a good faith belief that such facts exist. See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP, 256 F.R.D. 678, 682 (C.D. Cal. 2009) ("Requiring a defendant to answer a contention interrogatory and to produce documents that support its affirmative defenses is '[c]onsistent with Rule 11 of the Federal Rules of Civil Procedure,' which requires parties have some factual basis for their claims and allegations." (quoting United States ex rel. O'Connell v. Chapman Univ., 245 F.R.D. 646, 649 (C.D. Cal. 2007)). Thus, "discovery is continuing" is also an inadequate basis for not producing documents or answering interrogatories. Cf. id. at 650 ("Rule 11 requires plaintiffs to have a basis for their allegations in the complaint, and contention interrogatories seek information about that basis; thus, an objection that '[d]iscovery has only just begun' makes no sense at all.").
As such, Apple's response concerning its patent misuse and unclean hands defenses—that it will supplement its response on these defenses after conducting additional discovery—is insufficient and, although not before the Court, raises a potential Rule 11 issue. Apple is ordered to provide verified, supplemental responses to Interrogatory No. 9 that set forth the factual basis for the affirmative defenses of patent misuse and unclean hands within 10 days from the date of this Order. Apple may comply with this portion of the Order by voluntarily dismissing the patent misuse and unclean hands affirmative defenses by the same date.

In contrast, other than it being an unverified, Apple's response to Interrogatory No. 9 as to its estoppel defense is sufficient, because answering an interrogatory by referring to an earlier answer is permissible. However, to the extent a party incorporates a response to one interrogatory into the response to a separate interrogatory, it does so at its own risk that the incorporation did not include all appropriate information.

As for waiver, though Apple maintains that it has "provided narrative responses related to the pre-suit communications between Apple and Pinn that form the basis" for its

waiver defense (Dkt. 122 at 5), Apple's supplemental response to Interrogatory No. 9 incorporates by reference only its answer for Interrogatory No. 7 for its estoppel defense. Although estoppel and waiver can have similar factual underpinnings, Pinn has a right to a clear statement of the facts underlying each defense in response to Interrogatory No. 9. Neither Apple's amended response nor its supplemental response to Interrogatory No. 9 mention its answer to Interrogatory No. 8 or its waiver defense. See Jt. Stip. at 109-10. Furthermore, it is unclear whether Apple incorporated by reference its answers to Interrogatory Nos. 7 and 8 for both its estoppel and waiver defenses when it supplemented its response to Interrogatory No. 9 on May 26. The imperfect manner in which the parties have proceeded on the Motion have left the Court without full information of the status of the responses and the parties' positions. Thus, to the extent that it has not already done so, Apple shall serve a verified supplemental interrogatory response that substantively responds to Interrogatory No. 9 on its waiver defense within 10 days from the date of this Order.

Finally, the Court concludes Apple's response to RFP No. 38 is sufficient. With respect to any dispute regarding the date for production, as noted, under Rule 34, a propounding party may demand a reasonable date for production, and a responding party must complete the production "no later than the time for inspection specified in the request or another reasonable time specified in the response." Rule 34(b)(1)(B), (2)(B). Given that the parties do not specify what, if any, date was demanded, and what, if any, date was agreed to, the Court cannot find that any production is untimely. The Court can say, considering the discovery cutoff of August 4, 2020, that production must be completed within 10 days from the date of this Order.

The Motion as to Interrogatory No. 9 and RFP No. 38 is granted in part and denied in part. Apple shall provide a supplemental responsive answer to Interrogatory No. 9 and produce all nonprivileged documents responsive to RFP No. 38 within 10 days from the date of this Order, except for responsive ESI, as defined by the operative stipulated ESI Order, which shall be produced or properly identified by June 30, 2020.

**F. Information on Royalties and Licenses (Interrogatory Nos. 10-11 and RFP No. 12)**

Interrogatory Nos. 10 and 11 and RFP No. 12 seek information from Apple about licenses, covenants and settlements related to the Accused Products or any comparable licenses. Jt. Stip. at 110. Pinn argues that these requests are relevant to the damages inquiry under factors articulated in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). See Dkt. 123 at 6. Pinn contends that Apple "has not provided information about licenses on the Accused Products and refuses to answer Pinn's questions about royalties." Dkt. 123 at 6. Although Apple produced some licenses with its

supplemental response, Pinn argues that most of these documents "were older and do not appear to be explicitly directed at the Accused Products." Id.

Apple contends that it has produced responsive agreements in response to these discovery requests but had to comply with third-party notice requirements. See Dkt. 122 at 5; Jt. Stip. at 119. Apple also "continues to investigate specific agreements requested by Pinn and expects to produce additional agreements next month." Dkt. 122 at 5.

To the extent it has not already done so, Apple is to provide verified, complete answers to Interrogatory Nos. 10 and 11 and produce all nonprivileged documents responsive to RFP No. 12 within 10 days from the date of this Order.

**G. Pinn's Request for Monetary Sanctions**

Finally, Pinn seeks "monetary sanctions against Apple for its failure to withdraw its objections, failure to sufficiently respond to Pinn's discovery requests and failure to produce responsive documents." Jt. Stip. at 125.

Under Rule 37, when granting or denying a motion to compel, a court may allocate expenses incurred in bringing or opposing the motion. See Rule 37(a)(5)(A)-(B). If a motion to compel is granted in part and denied in part, a court "may apportion the reasonable expenses for the motion." Rule 37(a)(5)(C).

Here, the Court allocates the expenses so that neither party gets an award. Pinn's request for attorney's fees is therefore denied. In addition, as the Court finds Pinn violated the spirit of Local Rule 37-2 in forwarding its portion of the joint stipulation prior to receiving Apple's agreed-to supplemental response, the Court finds that an award of expenses to Pinn would be unjust under the circumstances.

## IV.
## CONCLUSION AND ORDER

For the reasons set forth above, it is hereby ORDERED that the Motion (Dkt. 115) is granted in part and denied in part, as follows:

- Apple shall serve proper verifications of its previously served answers to interrogatories within 10 days from the date of this Order;
- Apple shall serve proper supplemental responses to Interrogatory Nos. 3 and 4 consistent with this Order within 10 days from the date of this Order;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01805-DOC (JDEx) | Date | June 11, 2020 |
| Title | Pinn, Inc. v. Apple, Inc. | | |

- Apple shall produce all responsive, non-privileged documents responsive to RFP No. 35 within 10 days from the date of this Order, except as set forth below regarding ESI;
- The Motion is denied as to Interrogatory No. 6;
- Apple shall serve a supplemental response to Interrogatory No. 9 consistent with this Order and produce all nonprivileged documents responsive to RFP No. 38 within 10 days from the date of this Order, except as set forth below regarding ESI;
- Apple shall serve supplemental responses to Interrogatory Nos. 10 and 11 and serve all nonprivileged documents responsive to RFP No. 12 within 10 days from the date of this Order except as set forth below regarding ESI;
- Apple shall serve a compliant privilege log regarding any and all otherwise responsive or information documents withheld from production within 10 days from the date of this Order; and
- To the extent any material required for production or disclosure by this Order falls within the definition of ESI under the operative stipulated ESI Order, such material shall be produced by June 30, 2020.

IT IS SO ORDERED.

1 : 10

Initials of Clerk: mba